## BULKLEY *against* CHAPMAN and another.

*A.* executed a mortgage of land to *B.*, as security for *B.'s* indorsement of *A.'s* notes at the bank. *A.* failing to pay those notes, *B.* paid them, by giving his own notes, indorsed by *C.*, leaving *A's* notes still in the bank. *B.* failed to pay his notes, when they became due, in consequence of which *C.* was sued as indorser, by writs of attachment served on his real estate, which was eventually set off in satisfaction of executions obtained in those suits. Immediately after the service of the attachments against *C.*, he applied to *B.* for security ; and thereupon *B.* delivered to him *A's* mortgage deed, and assigned to him thereon all such right, title and interest as he, *B.*, had to the mortgaged property, taking from *C.* a conditional defeasance. *A.'s* notes so paid by *B.*, being left in the bank, were not delivered to *C.* On a bill in chancery brought by *C.* for the benefit of the security originally given to

*New-London,*
*July, 1831.*

Bulkley
v.
Chapman.

*B.*, it was held, that the intention of the parties in this transaction, was to be regarded and carried into effect; that this intention was to be collected from the words of the assignment, the subject matter and the situation of the parties; and that it was intended by such assignment of the mortgaged property, to assign the notes, without which the transfer would be unavailable; and consequently, that *C.* was entitled to the relief sought.

THIS was a bill in chancery against *Isaac Chapman* and *Abner Hendee*, administrator of the estate of *David Deming*, deceased, seeking such relief as in equity and justice was due to the plaintiff.

*Deming*, as the surety of *Chapman*, indorsed three promissory notes of his, payable at the *Middletown Bank*. *Chapman*, at the same time, gave *Deming* a mortgage of land, as collateral security for his indorsements. These notes *Deming* was called upon to pay; and he paid them, by giving his own notes, indorsed, for his accommodation, by the plaintiff, payable at the same bank. *Deming* failed to pay the last mentioned notes; and the plaintiff was sued as indorser, by writs of attachment served on his real estate; and judgments having been recovered in such suits, the plaintiff's land was set off in satisfaction of the executions issued on the judgments.

Immediately on the commencement of the suits against the plaintiff, he applied to *Deming* for security; and thereupon *Deming* delivered to him the mortgage deed from *Chapman* above mentioned, and assigned to him thereon all such right, title and interest as he had to the mortgaged property; taking from the plaintiff a defeasance, that if *Deming* should pay his notes and indemnify the plaintiff, the assignment should be void. The *Chapman* notes were not delivered to the plaintiff with the mortgage deed; *Deming* not having them in his possession; as after being paid, they were suffered to remain in the *Middletown Bank*. One of these notes, *viz.* one for 900 dollars, *Chapman* took from the bank; and *Hendee* possessed himself of the two other notes, one of them being for 900 dollars, and the other for 300 dollars. On these notes *Hendee* brought suits. On the larger note he obtained judgment and execution against *Chapman*: on the smaller note the action is still pending.

*Deming's* estate was represented, and was in fact, insolvent. The plaintiff exhibited before the commissioners his claim for the amount of the executions levied on his estate; which was allowed, and a set-off of debts due from the plaintiff to *Dem-*

*ing's* estate was made, reducing his demand to about 1596 dollars.  The plaintiff was likewise indebted to said estate for yarn in 180 dollars ; and as indorser for other notes for *Deming*, which the plaintiff had paid, the estate owed him 365 dollars.

*New-London,*
*July, 1831.*

Bulkley
*v.*
Chapman.

On these facts the case was reserved, upon the questions, whether the plaintiff was entitled to any decree in his favour ; and if so, what it should be.

*Goddard* and *Bulkley*, for the plaintiff, contended,   1. That independently of any contract between the parties, the plaintiff, having paid the debt of *Chapman* to the *Middletown Bank*, is entitled to all the security which *Deming* held from *Chapman*.   The man who has been compelled to pay the debt, is, upon the broad principle of justice, entitled to the fund created as a security for the payment of such debt.   *Ex parte Crisp*, 1 *Atk.* 135.   *Philips* v. *Thompson*, 2 *Johns. Chan. Rep.* 418. *Kip* v. *The Bank of New-York*, 10 *Johns. Rep.* 65.   *Homer* v. *The Savings Bank of New-Haven*, 7 *Conn. Rep.* 478. and cases therein cited.

2. That the plaintiff is entitled to the security in question, by virtue of the assignment of the mortgage.   It carried along with it the notes.   *Deming*, by that instrument, did what a court of equity would have compelled him to do.

3. That the proper relief is a decree against *Chapman*—for the whole amount which the plaintiff has been compelled to pay, deducting only what he has paid *Hendee* on execution, and against *Hendee* for the money collected on the note pursued to judgment and execution, for that part of the execution which is uncollected, for the note in suit and the benefit of that suit, and for the sum of 365 dollars *minus* 180 dollars.

*H. Strong*, contra, contended,   1. That aside from the assignment of the mortgage, the plaintiff had no right to call on *Deming*, nor after his decease, on his administrator, for an assignment of the debt due from *Chapman*, nor of the mortgage to secure it ;   the plaintiff being an entire stranger to all the transactions between *Deming* and *Chapman*.

2. That the assignment of the mortgaged premises conveys no interest in the debt secured by the mortgage.   The principal will draw after it the incident ; but the converse of this is not true.   *Lawrence* v. *Knapp*, 1 *Root* 248.   *Crosby* v. *Brown-*

son, 2 *Day* 430. *Austin* v. *Burbank*, 2 *Day* 474. *Huntington* v. *Smith*, 4 *Conn. Rep.* 237. *Green* v. *Hart*, 1 *Johns. Rep.* 580. *Jackson* d. *Norton* & al. v. *Willard*, 4 *Johns. Rep.* 41. A conveyance of the *pledge*, without the *debt*, is of no avail.

3. That the debt of the plaintiff was reduced, by the judgment of the commissioners making the set-off, in the same manner as it would have been, by a payment of equal amount, and cannot be afterwards enlarged, by the plaintiff's paying the debts of *Deming*.

HOSMER, Ch. J.    The great question in the case, is, whether the notes of *Chapman* were assigned to the plaintiff.

By a recurrence to the words of the assignment, the subject matter and the situation of the parties, their intention will be ascertained ; and where this is found, their agreement appears of course. *Sumner*, admr. v. *Williams*, 8 *Mass. Rep.* 214. *Fowle* v. *Bigelow*, 10 *Mass. Rep.* 370. *Hopkins* v. *Young*, 11 *Mass. Rep.* 302. *Brewer* v. *Knapp* & al. 1 *Pick.* 332. It is a law maxim, *Verba intentioni debent inservire.* If the ordinary meaning of words render a contract frivolous or ineffective, a deviation from the received sense is admitted, to prevent such absurdity. It is a settled rule, that *Verba aliquid operari debent et cum effectu sunt accipienda. Plowden* 156. And so far is this principle carried, that if a deed is inoperative in one way, it shall operate in the way it can, rather than that the intention of the parties shall be frustrated, by the inefficiency of the contract. Hence a deed made to one purpose, may enure to another ; if intended for a release, it may be construed as a grant of the reversion ; or as a covenant to stand seised ; or in any manner in which it can legally operate. *Shep. Touch.* 82. 2 *Wilson* 75. If the words, said Lord *Mansfield*, in *Goodtile* v. *Bailey*, *Cowp.* 597. 600. cannot operate in one form, they shall operate in that, which by law will effectuate the intention. And on this principle it has been adjudged, that the grant of a remainder will pass a reversion, *et e converso*, if such appears to be the intention. *Hob.* 27.

The application of these principles to the case before the Court, is extremely obvious. What the intention was, it is impossible to question. As the surety of *Deming*, *Bulkley's* property was attached, and immediate application was made, by him, to his principal, for indemnity. *Deming*, therefore, as-

signed to him the mortgage of *Chapman*, and delivered to him the mortgage deed; and that he would, likewise, have delivered the notes, had they been in his possession, is but a reasonable presumption. If nothing more was intended, than a transfer of the deed, the transaction was frivolous and absurd, being without any useful legal operation. An assignment of the deed conveyed no beneficial interest. The land comprised in it was only an incident to the debt, and could not be dissevered from it, and convey any title. This has been repeatedly decided. *Lawrence* v. *Knap* & al. 1 *Root* 248. *Crosby* v. *Brownson*, 2 *Day*, 430. *Austin* v. *Burbank*, 2 *Day*, 474. *Huntington* v. *Smith*, 4 *Conn. Rep.* 237. *Green* v. *Hart*, 1 *Johns. Rep.* 580. *Jackson* d. *Norton* & al. v. *Willard*, 4 *Johns. Rep.* 41. If the letter of the assignment is adhered to, the object of the parties is entirely frustrated, and the words, so far from being in subserviency to the intention, or operating any indemnity, are utterly nugatory and inefficient. It, therefore, is no strained interpretation, to hold, that by the assignment of "*the mortgaged property*," it was intended to assign the notes, without which the transfer was unavailable. But by giving this construction, the words are rendered subservient to the just intention of the parties; the transaction has efficiency and operation; and the plaintiff acquires what he sought after, and what *Deming* purposed to give, to wit, indemnity for his demands.

The notes, then, were assigned to the plaintiff, as well as the deed; and the defendants, by possessing themselves of them without any right, have done the plaintiff an injury. The notes ought to be restored; and as far as this cannot be done, an equivalent ought to be decreed.

As a necessary consequence of this principle, the superior court is advised, that the bill of the plaintiff be granted;—that the defendant *Hendee* be decreed to pay the money collected of *Chapman* to the plaintiff; that he deliver over to the plaintiff the execution uncollected, and the note in suit; that a decree of foreclosure pass against *Hendee*, unless he pay the residue found by the commissioners, and also the difference between the 180 dollars and 365 dollars; that there be an injunction against the plaintiff's receiving the dividends on *Deming's* estate; and that upon the failure of *Hendee* to pay, by the time limited, *Chapman* be ordered to pay, &c. or be foreclosed.

DAGGETT and BISSELL, Js., were of the same opinion.

PETERS and WILLIAMS, Js., gave no opinion, being interested in the fund out of which the plaintiff sought relief.

Decree for the plaintiff.